**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

**SUSAN HODGE,**

    **Plaintiff,**

v.

                              **CASE NO.: 5:13-cv-62-Oc-10PRL**

**CLOSETMAID CORPORATION, a Florida
Corporation, and CATHERINE BEAL,
an individual,**

    **Defendants.**
                                              /

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF**

Under Rule 56 of the Federal Rules of Civil Procedure, Defendants ClosetMaid Corporation and Catherine Beal (hereinafter collectively referred to as "Defendants"), hereby move for final summary judgment in their favor and against Plaintiff on all counts and in support thereof, state:

**I.    INTRODUCTION**

Plaintiff Susan Hodge ("Hodge") seeks overtime wages under the Fair Labor Standards Act ("FLSA") against her employer, ClosetMaid and the Vice President of Human Resources, Catherine "Cathy" Beal, alleging that she was improperly classified as exempt in her position of Occupational Nurse. However, based on the undisputed material facts, Hodge was exempt from the overtime requirements of the FLSA under the administrative employee exemption as a matter of law. Defendants ClosetMaid and Beal are entitled to summary judgment as a matter of law on all counts.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)). The moving party bears the initial responsibility of demonstrating there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden may be met by "showing" or "pointing out" to the Court there is no genuine dispute regarding the material facts. *Jeffrey v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (quoting *Celotex*, 447 U.S. at 325). Once the initial burden is met, the non-moving party must go beyond the pleadings and "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); *see also Celotex*, 477 U.S. at 324. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Instead, there must be a sufficient showing the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). "[U]nsupported, self-serving statements of the party opposing summary judgment are insufficient to avoid summary judgment." *Penalty Kick Mgmt. v. Coca-Cola Co.*, 164 F.Supp.2d 1376, 1378 (N.D. Ga. 2001) (citing *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 714 (11th Cir. 1984)).

### III. STATEMENT OF UNDISPUTED FACTS

**A. NATIONAL BUSINESS OF CLOSETMAID.**

Defendant ClosetMaid Corporation is in the business of providing consumers with ways to improve storage in homes and offices. ClosetMaid is a worldwide leader in home storage and organization, offering innovative wire and laminate/wood storage systems for bedrooms, kitchens, family rooms, laundry rooms, home offices and garages. Beal Declaration ¶2. ClosetMaid's corporate headquarters are in Ocala, Florida with manufacturing facilities in Ocala, Chino, California, Belle Vernon, Pennsylvania, and Cumberland/Grantsville, Maryland. Beal Declaration ¶3. ClosetMaid averages in excess of approximately $850,000 each year on the administration and costs of its occupational injuries. Beal Declaration ¶6.

**B. MANAGEMENT OF WORKERS' COMPENSATION CLAIMS IS A SIGNIFICANT RESPONSIBILITY.**

Hodge worked at the Ocala corporate headquarters, in the Human Resources Department, as the Occupational Nurse. The Occupational Nurse provides in-house oversight and management of the Company's occupational, workers' compensation injury claims. Beal, p. 10, lns 2-5. ClosetMaid, as a self-insured workers' compensation employer, uses a Third-Party Administrator ("TPA") to adjust those claims. Hodge, p. 39, lns. 20-24. However, to ensure optimal care is given to claimants in a cost effective manner, ClosetMaid, through the responsibilities of the Occupational Nurse, takes a hands-on role in the administration of workers' compensation injury cases and the overall workers' compensation process. Beal, p. 10, lns 2-5; Beal Declaration ¶8. This allows ClosetMaid to maintain a consistent check on the TPA and ensure responsible use of company funds while providing fair and appropriate care to injured workers. Beal Declaration ¶8. The position of Occupational Nurse is directly related to the

management operations of ClosetMaid because workers' compensation claims are a significant cost to the organization. Beal, p. 11, lns. 21-25, p. 12, ln. 1.

Defendant Cathy Beal is the Vice President of Human Resources. As the Occupational Nurse is part of the Human Resources Department, Hodge reported to Beal during her employment.[1] Beal Declaration ¶5.

### C. HODGE MEETS CRITERIA FOR ADMINISTRATIVE EXEMPTION.

ClosetMaid employed Hodge as the Occupational Nurse from November 2, 2006 to August 29, 2012. ClosetMaid paid Hodge a salary of $53,025.00 per year. Beal, p. 10, lns 12-13; Beal Declaration ¶4. At all times, Hodge understood she was an exempt employee and was treated as such throughout her employment. Hodge, p. 14, lns. 14-22. Hodge understood she could deviate from her normal schedule without permission, so long as others knew of her availability if she was needed. Hodge, p. 15, lns. 14-21; Beal, p. 14, lns. 24-25, p. 15, lns. 1-6, 10-25. Hodge understood she would not be docked in pay or forced to use vacation or personal time for these personal appointments. Hodge, p. 19, lns. 13-18; p. 20, lns. 1-3. Hodge had the flexibility to manage her own schedule as her job demanded. Hodge, p. 16, lns. 6-25; p. 17, lns. 1-3.

Hodge's job was to "Establish[], promote[], coordinate[], recommend[] treatment plans of all Workers' Compensation claimants with the ultimate goal of ensuring optimal care is given in a cost effective manner by performing the [duties of the Occupational Nurse] personally or through other employees." Hodge, p. 22, lns. 12-21, Exhibit 1. Although Hodge's office location was in Ocala, Florida, Hodge managed the workers' compensation claims for the employees in Florida, California, Pennsylvania, and Maryland. Hodge, p. 23, lns. 23-25; p. 24,

---

[1] Defendants dispute that Defendant Beal meets the requirements for an "employer" under the FLSA, as she did not direct the day-to-day tasks of Hodge or the operations of ClosetMaid. *See Patel v. Wargo*, 803 F. 2d 632 (11th Cir. 1986). However, for purposes of this motion alone, Hodge's allegation of such will be taken as true.

4

lns. 1-24. Hodge managed between 30 and 50 claims at any given time during her last three years as the Occupational Nurse. Hodge, p. 25, lns. 16-25

### 1. THE MAJORITY, IF NOT ALL, OF HODGE'S JOB DUTIES RELATED TO THE ADMINISTRATION OF WORKERS' COMPENSATION CLAIMS AND INJURIES.

Hodge performed no manual or manufacturing duties for the Company.[2] Hodge, p. 71, lns. 2-11. Hodge admits that **the majority of her job, if not all** of it, was geared toward administering the workers' compensation cases and processes for the Company – nationwide – by performing the following duties (Hodge, p. 22, lns.19-25; p. 23, lns. 1-7):

    1. Assess the initial occupational injury, either directly or after receiving information from an on-site supervisor to determine whether the claim was a first aid injury or whether the claimant would be sent out to the contracted workers' compensation medical clinic. Hodge, p. 27, lns. 21-25; p. 32, lns. 1-8; p. 42, lns. 4-8 Hodge had absolute discretion and authority in this decision. Hodge, p. 28, lns. 15-21. In fact, Hodge had the discretion to select the medical clinic used by the Company. Hodge, p. 35, lns. 14-20.

    2. Consult with the treating physician regarding treatment plans to ensure appropriate light duty assignments, duration of condition and probable Maximum Medical Improvement ("MMI") dates to provide recommendations related to potential settlement of claim and litigation surveillance. Hodge, p. 28, lns. 22-25; p. 32, lns. 1-8; p. 42, lns. 4-8; p. 45, lns. 23-25.

    3. Track and monitor on-going claims, using discretion and medical understanding to provide recommendations regarding approval of expenditures for

---

[2] Any ancillary medical duties, such as ear or eye lavage or removal of minor sutures or first aid were *de minimis*, but also in furtherance of Plaintiff's claims administration responsibilities in monitoring and managing occupational injuries for ClosetMaid. Beal, p. 20, lns. 8-9.

5

surveillance and mediation authority to V.P. of Human Resources Beal. Hodge, p. 40, lns. 16-25; p. 41, lns. 1-8. Hodge had absolute discretion as to what information was material and would be tracked and reported to Beal. Hodge, p. 41, ln. 25; p. 42, lns. 1-3; Beal, p. 23, lns. 4-24.

    4. Audit financial reports and expenditures on workers' compensation claims for reconciliation and fiscal responsibility. Hodge, p. 39, ln. 25; p. 40, lns. 1-5. Where irregularities in treatment and payment were noted, Hodge identified them, researched them, and advised the adjuster and higher management of the issues involved. Hodge, p. 40, lns. 14-25; p. 41, lns. 1-7. Hodge used her medical and independent judgment. Hodge, p. 42, lns. 19-23. For example, if an employee suffered a low back injury, but the TPA paid for cardiac care, Hodge would identify that anomaly, notify and question the adjuster as to the expense, and reconcile the treatment as appropriate or inappropriate, making the recommendation whether the care should be covered under the claim. Hodge, p. 40, lns. 10-15.

    5. Determination and recommendation based on medical expertise as to whether light duty assignments of injured workers were appropriate for their individual restrictions. Hodge, p. 37, lns. 11-13.

    6. Determination and recommendation based on medical expertise as to whether claim was medically valid, suspicious, or should be questioned by the Company. Hodge, p. 42, lns. 19-23.

    7. Attendance and representation of Company at mediation of workers' compensation claims holding monetary authority for resolution of claims. Hodge, p. 43, lns. 3-11, 16-19.

      8. Working with TPA adjuster and outside counsel to ensure that both received the material information related to all matters concerning the claimant's condition at work, including selection of which information and facts were material and necessary for report.  Hodge, p. 26, lns. 17-25; p. 27, lns. 1-12.

      9. Ensure compliance with legal requirements for post-accident drug testing under Florida's Workers' Compensation Act.  Hodge, p. 45, lns. 17-22; p. 46, lns. 3-5.

      10. Receive and resolve complaints from claimants regarding treatment plans and light duty assignments.  Hodge, p. 33, lns. 6-24; p. 34, lns. 1-25.

**2.  HODGE USED HER OWN EXPERIENCE AND EXPERTISE TO EXERCISE DISCRETION IN HER POSITION.**

Throughout the claims administration process, Hodge exercised discretion in deciding which employees would be sent to the workers' compensation clinic, which employees would be recommended for surveillance, which employees' job duties related to light duty assignments would be modified, which employees' claims would be considered for lump-sum settlement, what ancillary treatment would be covered by and authorized for payment by the TPA, etc. Hodge p. 32, lns. 1-8; p. 35, lns. 14-25; p. 42, lns. 1-18.  Hodge was tasked with determining what information regarding individual claims would be shared with various levels of management, and the interpretation thereof, and impact on the company's decisions related to those claims.  Hodge, p. 30, lns. 3-22.  Hodge administered between thirty (30) and fifty (50) claims for the company nationwide on any day during the three years preceding the termination of her employment.  Hodge, p. 25, lns. 16-25; p. 26, lns. 1-3.

Conversely, Beal made no decisions regarding workers' compensation claims unless Hodge brought an issue to her attention.  Beal, p. 22, lns. 5-10.  Specifically,

7

> Q: So you never personally consulted with the attorneys, adjusters or supervisors regarding the medical claims?
>
> A: That was [Hodge's] job. If she brought situations to me, yes. There were times we did managed care meetings. You know, there is a huge fiduciary responsibility to that company and so obviously I was involved in that part of it. But she, on a day-to-day basis, if you will, is the one that dealt with the adjusters and attorneys. And occasionally she would bring something to me and I would get involved in it[.]

Beal, p. 22, lns. 11-22.

> Q: … When she brought something to you, if it got to that point, who would you consult to inform yourself about the claim?
>
> A: I would consult [Hodge] for enough information that I could even talk to the adjuster or the attorneys. I don't know if that was your question.
>
> \* \* \*
>
> A: [Hodge] was the person, the point guard, that dealt with every single claim that occurred. She was involved with me sometimes. Well, she was always involved when the attorneys were involved. And she would bring them to me or we would bring in the attorney …, and I would talk to them.

Beal, p. 23, lns. 4-24.

> Regarding Hodge's involvement in settling workers' compensation cases,
>
> [I]f [Hodge] recommended that [ClosetMaid] settle a case, [Beal] looks at it. [Beal] talks to [Hodge]. If it's within the reserves that are set, if it's not an unreasonable amount of money, then [Beal and Hodge] would agree [they] need to settle it and [Beal] would give an authority amount after taking with [Hodge].

Beal, p. 24, lns. 5-11. Regarding the actual representation at mediation for the Company, Hodge was given "authority levels. … [i]f during that mediation they said okay we can settle the thing for a thousand dollars more and [Hodge] couldn't get in touch with me, I would say that chances are that would have been settled." Beal, p. 25, lns. 10-14. "[Hodge] worked with the adjusters and with the attorney. They discussed a settlement offer and [Hodge] brought it to [Beal] for full

authority. If it was beyond [Beal's] limit, [she] took it to the president [of ClosetMaid]." Beal, p. 25, lns. 19-22.

    3. **HODGE MADE AND IMPLEMENTED MANAGEMENT POLICY AND PROCEDURE FOR WORKERS' COMPENSATION CLAIMS ADMINISTRATION AND OTHER *DE MINIMIS* OCCUPATIONAL NURSE DUTIES.**

Hodge had authority to make or implement management policies within the scope of her responsibility in managing the workers' compensation claims. Beal, p. 12, lns. 2-4. Hodge reviewed and revised policies and procedures related to her area of control. Hodge, p. 47, lns. 4-21. Plaintiff's revisions were accepted and incorporated by ClosetMaid. Beal, p. 12, lns. 20-25. They are the policies and procedures in place today. Beal, p. 14, lns. 5-9. Policies reviewed and revised by Plaintiff include, but are not limited to: off site drug screen procedure; health clinic accounts payable procedure; respiratory fit test procedure; work-related injury/illness procedure (for Belle Vernon and Ocala locations); and drug-free workplace policy. Hodge, p. 48, lns. 8-25; p. 49, lns. 3-6, 14-17, 23-25; p. 50, lns. 1-10.

    4. **HODGE WAS RESPONSIBLE FOR BUDGETING FOR HER FUNCTION.**

Hodge also submitted the budget for the in-house occupational clinic, for which her job required she perform very few actual nursing duties. Beal, p. 18, lns 17-18; p. 20, lns. 8-9. In establishing the budget, Hodge used her own discretion and was "not really" given any direction or standards to follow. Beal, p. 18, lns. 17-25

**IV. HODGE WAS PROPERLY CLASSIFIED AS EXEMPT UNDER THE FLSA.**

Hodge contends that because she was a Licensed Professional Nurse ("LPN"), instead of a Registered Nurse ("RN"), she was improperly classified as exempt in her position of Occupational Nurse for ClosetMaid's corporate Human Resources Department. However, Hodge is not entitled to the overtime payments she seeks because she was properly categorized

as exempt under the FLSA's administrative exemption. The undisputed facts taken in the light most favorable to Hodge demonstrate Hodge was properly treated as exempt.

Contrary to Hodge's contention that her LPN status, as opposed to RN, for the position of Occupational Nurse makes her non-exempt, whether Hodge was correctly classified as exempt depends on the character of her responsibilities and tasks, not on her job title. • *Justice v. Metropolitan Gov't of Nashville*, 4 F.3d 1387, 1392 (6th Cir. 1993) (quoting *Overstreet v. North Shore Corp.*, 318 U.S. 125, 132). "While an issue concerning how an employee spends [her] working time constitutes a question of fact, the issue of whether particular activities exempt an employee from the FLSA is an issue of law." *Bouder v. Prudential Financial, Inc.*, Case No. 06-CV-4359 (DMC), 2010 WL 3515567, at *4 (D.N.J. Aug. 31, 2010) (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)). "[T]he factual question under the FLSA is not how an employee believed she spent her workday, but what she actually did." *Chenensky v. New York Life Ins. Co.*, Case No. 07 Civ. 11504 (WHP), 2010 WL 2710586, at *2 (S.D.N.Y. June 24, 2010) (citing *Reiseck v. Universal Comm'ns of Miami, Inc.*, 591 F.3d 101, 107-08 (2d Cir. 2010)). Here, the facts regarding Hodge's primary duties, as presented in the light most favorable to Hodge, show those duties are exempt as a matter of law under the Administrative Exemption.

    A. **ADMINISTRATIVE EXEMPTION.**

As stated in 29 C.F.R. § 541.200(a), the term "employee employed in a bona fide administrative capacity" means "any employee":

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

Regarding the second prong – the type of work that qualifies for the administrative exemption,

> [t]he phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an **employee must perform work directly related to assisting with the running or servicing of the business**, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

29 C.F.R. § 541.201(a) (emphasis added).

> Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; **finance**; accounting; budgeting; **auditing**; **insurance**; quality control; purchasing; procurement; advertising; marketing; research; **safety and health**; personnel management; **human resources**; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b) (emphasis added).

Hodge was paid a salary over the required $455 per week throughout her employment with ClosetMaid. Hodge admits that the majority, if not all, of her job was directly related to servicing the business of ClosetMaid through the administration and management of its workers' compensation claims, and not related to any servicing of ClosetMaid customers or production goods or services by ClosetMaid. The administration of workers' compensation claims for a self-insured employer is an important management function directly related, *inter alia*, to the financial expenditures of the Company, workers' compensation liability, and health and safety for injured workers. Beal Declaration ¶7. Hodge admits she used her own medical expertise to identify material facts and information, analyze this data, and provided recommendations to management and physician providers regarding treatment plans, expenditures, light duty assignments, legal strategy (i.e., surveillance) and settlement. Hodge, pp. 27-28.

> To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.

29 C.F.R. § 541.202(a). *Jackson v. Alpharma, Inc.*, Case No. 07-3250 (GEB-DEA), 2010 WL 2869530, at *3 (D.N.J. July 19, 2010). Workers' compensation claims are significant to ClosetMaid because they are a significant cost to the Company. Hodge's admission that she used her own experiences and expertise to analyze the injuries, the treatment planned by the physicians, the light duty assignments provided by the Company, the cost to the Company, and the potential future litigation for the purposes of administration and defense of claims (i.e., recommendations of surveillance and/or settlement) more than satisfactorily fulfills the exemption's requirements of discretion and independent judgment relating to a matter of significance.

Finally, regarding this third prong, "[t]he exercise of discretion and independent judgment implies that the employee has the authority to make an independent choice, free from immediate direction or supervision…employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level," and discretion and independent judgment can "consist of recommendations for action rather than the actual taking of action." 29 C.F.R. § 541.202(c). Here, ClosetMaid averages in excess of approximately $850,000 each year on the administration and costs of its occupational injuries. Beal Declaration ¶6. The work that Hodge performed as the sole in-house administrator of those claims and the recommendations made by her to higher management were of significant importance to the self-insured company. Hodge admits that as far as she knew, her

recommendations were given great weight by higher management and followed. Defendant Beal concedes that Hodge was her "point guard" when it came to workers' compensation claims, and that if Hodge did not bring a matter to her attention, she took no action. Beal Declaration ¶9.

### B. ANALOGOUS CASE OF *SZYMULA V. ASH GROVE CEMENT CO.*, CONFIRMS APPROPRIATE EXEMPT CLASSIFICATION.

This case is analogous to *Szymula v. Ash Grove Cement Co.*, 941 F. Supp. 1032 (D. Kan. 1996), where the court granted summary judgment for the time that the plaintiff performed nearly identical duties as Hodge performed. In *Szymula*, the plaintiff was an administrative assistant for the Risk Manager. Over fifty (50%) percent of plaintiff's time was spent administering the company's workers compensation claims. Like here, the plaintiff's

> "responsibilities included: helping determine whether employees needed to consult physicians and, on occasion, whether employees should be placed under surveillance; assisting corporate management in ascertaining whether private investigators should be retained; working closely with the various insurance carriers administering Ash Grove Material's plan in an attempt to reduce costs; and formulating proposed claim settlements for [the Risk Manager's] approval."

*Id* at 1035. While the *Szymula* plaintiff, like here, contended she could not act without the consent of her superior, finding the applicability of the administrative exemption, the court held that was of no moment as the necessity for approval by superiors does not eliminate the exemption.

The *Szymula* court explained that the regulations provide,

> [T]he term discretion and independent judgment ... does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review. The decisions ... may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment within the meaning of the regulations.

13

*Id*. at 1038, citing 29 C.F.R. § 541.207(e).  Further bolstering the ruling that the plaintiff was exempt, the *Szymula* court found persuasive the fact that, like here, the plaintiff "proposed topics for inclusion in the [employee] manual."  *Id*. at 1038.  Even though contributions were submitted for approval by the Risk Manager, the plaintiff drafted several parts of the text herself.  *Id*.  Here, Hodge also proposed and drafted revisions to numerous policies and procedures – language which was incorporated into the final documents.  Hodge also formulated and submitted the budget for her area of responsibility.

While Hodge performed other *de minimis* duties, such as eye and ear lavage, even those duties were in furtherance of her primary responsibility for managing the occupational injury claims/workers' compensation claims for the Company, continuing to support the propriety of the administrative exemption.  *See, e.g., Juback v. Radioshack Corp.*, Case No. 8:08-cv-768-T-24TBM, 2009 WL 1259990, at *2 (M.D. Fla. May 6, 2009) ("If an employee spends more than fifty percent of his time performing exempt work, he will generally be considered exempt from the overtime requirement. [29 C.F.R.] § 541.700(b)).  However, an employee may still be exempt even if exempt work consumes less than fifty percent of his time, if the other factors indicate that the exempt work constitutes her primary duty. *Id*."); *Ferrell v. Gwinnett County Bd. of Educ.*, 481 F.Supp.2d 1338, 1344 (N.D. Ga. 2007) ("time is only one factor to consider in the primary duty analysis . . . the more appropriate inquiry is to examine plaintiffs' primary value to the [employer].") (internal citations omitted).  Here, virtually all of Hodge's work time was devoted to the exempt task of managing the workers' compensation claims for the Company nationwide.  *See, e.g., Stevens v. Simplex Grinnell*, 190 Fed. Appx. 768, 771 (11th Cir. 2006) ("[W]ork performed incidental to and in conjunction with the employee's own outside sales or

solicitations ... shall not be regarded as nonexempt work.")  Defendants are entitled to summary judgment as a matter of law.

### V. HODGE'S UNJUST ENRICHMENT CLAIM UTTERLY FAILS AS SHE WAS PAID APPROPRIATELY UNDER THE FLSA

Hodge's unjust enrichment claim also fails on the merits because she has not shown she conferred any benefit upon either Defendant ClosetMaid or Beal for which she was not adequately compensated.  To recover under a theory of unjust enrichment, Hodge must show (1) she conferred a benefit on Defendants; (2) that Defendants had knowledge of the benefit conferred; (3) that Defendants voluntarily accepted and retained the benefit conferred; and (4) "the circumstances are such that it would be inequitable for [Defendants] to retain the benefit without paying for it."  *Nova Information Systems, Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1006-07 (11th Cir. 2004).  Here, Hodge bases her unjust enrichment claim solely upon her allegations that she was improperly classified as exempt under the FLSA.  However, there is no evidence that Defendants ClosetMaid or Beal improperly classified Hodge as exempt.  The law precludes recovery of equitable relief where a Plaintiff has provided Defendants "with no more than that which [s]he was hired to do and for which [s]he was paid [her] salary."  *Uphoff v. Wachovia Sec., LLC*, No. 09-80420, 2009 WL 5031345, *5-6 (S.D. Fla. Dec. 14, 2009); *see also Sleit v. Ricoh Corp.*, No. 8:07-cv-724, 2008 WL 4826113, *10 (M.D. Fla. Nov. 4, 2008); *Gene B. Glick Co. v. Sunshine Ready Concrete Co.*, 651 So. 2d 190 (Fla. 4th DCA 1995).  Defendants are entitled to summary judgment on this claim.

### VI. CONCLUSION

Based on the undisputed facts presented herein, and applicable law, Hodge is exempt from the overtime requirements of the FLSA.  Defendants ClosetMaid and Beal are entitled to

summary judgment on Hodge's claims as a matter of law, and request that the Court enter judgment in their favor with such other and further relief as is appropriate.

DATED this 31st day of January, 2014.

Respectfully submitted,

*/s/Jennifer Monrose Moore*
WILLIAM E. GROB
Florida Bar Number 0463124
E-mail: william.grob@ogletreedeakins.com
JENNIFER MONROSE MOORE
Florida Bar Number 35602
E-mail: jennifer.moore@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK &
  STEWART, P.C.
100 North Tampa Street, Suite 3600
Tampa, Florida  33602
Telephone:  813.289.1247
Facsimile: 813.289.6530

*ATTORNEYS FOR DEFENDANTS*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 31st day of January, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Lynette Whitehurst, Esq., Blanchard, Merriam, Adel & Kirkland, P.A., Post Office Box 1869, Ocala, FL 34478, lwhitehurst@bmaklaw.com, Counsel for Plaintiff.

*/s/ Jennifer Monrose Moore*
Jennifer Monrose Moore

16871844.1