UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SUSAN HODGE,

      Plaintiff,

v.

                                             CASE NO.:  5:13-cv-62-Oc-10PRL

CLOSETMAID CORPORATION, a Florida
Corporation, and CATHERINE BEAL,
an individual,

      Defendants.

_____/

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

Defendants, ClosetMaid Corporation and Catherine Beal (hereinafter collectively referred to as "Defendants"), respond in opposition to Plaintiff's Cross Motion for Summary Judgment and in support thereof, state:

**I.**     **PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT IS UNTIMELY.**

The Court's Case Management and Scheduling Order (Doc. 10) required the parties to file any dispositive motion by February 3, 2014, **not later than ninety (90) days prior to the trial in this case.**  Plaintiff seeks to avoid this deadline by titling her dispositive motion as a "cross motion."  Fed. R. Civ. P. 16 permits the Court the discretion to regulate the proceedings, and decline to hear untimely motions in violation of the Court's prior orders.  As such, the Court should strike Plaintiff's untimely dispositive "cross motion" without further consideration.

**II.**     **IF CONSIDERED, PLAINTIFF'S CROSS MOTION SHOULD BE DENIED.**

    **A.**     **INTRODUCTION & UNDISPUTED FACTS.**

Plaintiff does not dispute any of the undisputed facts advanced by Defendants in their Motion for Summary Judgment (Doc. 14), but merely adds two non-material facts.  Because

Plaintiff's "Undisputed Facts" are not material to the issue of whether Plaintiff was properly classified as exempt in her position as an Occupational Nurse, neither precludes the Court's entry of summary judgment in this case, and Defendants "Undisputed Facts" should be deemed admitted by Plaintiff. *See* Summary Judgment Notice, Doc. 18, citing *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).

While Plaintiff does not dispute the undisputed facts advanced by Defendants, she seeks to mischaracterize them. Importantly, Plaintiff argues that her primary job duties involved treating injured workers, attempting to downplay the importance and primary focus of her duties, which was the administration of Defendant ClosetMaid's workers' compensation claims nationwide. These nationwide claims involved numerous employees who worked outside the state of Florida, and for which Plaintiff could have provided absolutely no treatment whatsoever.

Plaintiff premises her argument on the fact that she is a Licensed Professional Nurse and that she used her medical knowledge to assist her in the performance of her duties administering the day-to-day oversight of the Company's workers' compensation claims nationwide. This argument is confusing, contradictory, and utterly fails, as any alleged "nursing" duties were *de minimis* and paled in comparison to Plaintiff's admitted primary job duties directly related to the administration of the Company's workers' compensation claims for the employees in Florida, California, Pennsylvania, and Maryland. Hodge, p. 23, lns. 23-25; p. 24, lns. 1-24.[1] Plaintiff admits that she managed between 30 and 50 claims at any given time during her last three years as the Occupational Nurse. Hodge, p. 25, lns. 16-25.

---

[1] The deposition transcript of Plaintiff, Susan Hodge was previously filed with the Court in support of Defendant's Motion for Summary Judgment (*See* Doc. 16).

**B.    DEFENDANTS MEET THE PRIMARY DUTY TEST FOR THE ADMINISTRATIVE EXEMPTION.**

Correctly stated by Plaintiff, the primary duty test offers three types of employment categories which may qualify as "administrative":

1. Significantly affects the formulation *or execution of management programs or policies*; or

2. Involves management or general business functions *or supporting services of substantial importance to the organization serviced*; or

3. Involves *substantial participation in the* executive or *administrative functions of a management official*.

5 C.F.R. §551.206(a)(1)-(3) (2007) (Emphasis added).  While Defendants need only show one of the three categories above, Plaintiff's deposition testimony supports all three.

Plaintiff's job duties fulfill both the first and second categories of the primary duty test, as they significantly affected the execution of the Company's Risk Management/Safety/Human Resources functions as they relate to the workers' compensation liability for the Company nationwide.   Specifically, Defendant ClosetMaid, as a self-insured workers' compensation employer, uses a Third-Party Administrator ("TPA") to adjust workers' compensation claims. Hodge, p. 39, lns. 20-24.  To ensure optimal care is given to claimants in a cost effective manner, ClosetMaid, through the responsibilities of the Occupational Nurse, takes a hands-on role in the administration of workers' compensation injury cases and the overall workers' compensation process.   Beal, p. 10, lns 2-5[2]; Beal Declaration ¶8[3].   This allows ClosetMaid to maintain a consistent check on the TPA and ensure responsible use of company funds while providing fair and appropriate care to injured workers.   Beal Declaration ¶8.   Workers' compensation claims

---

[2] The deposition transcript of Defendant Catherine Beal was previously filed with the Court in support of Defendant's Motion for Summary Judgment (*See* Doc. 17).
[3] The Declaration of Catherine Beal was previously filed with the Court in support of Defendant's Motion for Summary Judgment (*See* Doc. 15).

are a significant cost to the organization.  Beal, p. 11, lns. 21-25, p. 12, ln. 1.  As such, Plaintiff's duties fulfill the primary duties test, and Plaintiff was properly classified as exempt.

Notwithstanding meeting the tests in sections (a)(1) and (2), Plaintiff's duties also fulfill the third category of employment as Defendant Beal, the Vice President of Human Resources, relied on Plaintiff as her "point guard" for the administration of the workers' compensation claims.  Specifically, Beal's uncontradicted testimony was that she made no decisions regarding workers' compensation claims unless Plaintiff brought an issue to her attention.  Beal, p. 22, lns. 5-10.  Specifically,

> Q:    *So you never personally consulted with the attorneys, adjusters or supervisors regarding the medical claims?*
>
> A:    *That was [Hodge's] job.*  If she brought situations to me, yes.  There were times we did managed care meetings.  You know, there is a huge fiduciary responsibility to that company and so obviously I was involved in that part of it.  *But she, on a day-to-day basis, if you will, is the one that dealt with the adjusters and attorneys.   And occasionally she would bring something to me and I would get involved in it[.]*

Beal, p. 22, lns. 11-22.

> Q:    *… When she brought something to you, if it got to that point, who would you consult to inform yourself about the claim?*
>
> A:    *I would consult [Hodge]* for enough information that I could even talk to the adjuster or the attorneys.  I don't know if that was your question.
>
> * * *
>
> A:    *[Hodge] was the person, the point guard, that dealt with every single claim that occurred.  She was involved with me sometimes.  Well, she was always involved when the attorneys were involved.  And she would bring them to me or we would bring in the attorney …, and I would talk to them.*

Beal, p. 23, lns. 4-24.

* * *

4

> *[I]f [Hodge] recommended that [ClosetMaid] settle a case, [Beal] looks at it.* [Beal] talks to [Hodge].  If it's within the reserves that are set, *if it's not an unreasonable amount of money, then [Beal and Hodge] would agree [they] need to settle it and [Beal] would give an authority amount after taking with [Hodge].*

Beal, p. 24, lns. 5-11.  As is clear from the uncontroverted testimony above, Plaintiff's job duties involved "substantial participation in the … administrative functions of a management official," making Plaintiff properly classified as exempt.  As such, summary judgment is appropriate.

### C.  ADMITTEDLY THE MAJORITY, IF NOT ALL OF PLAINTIFF'S DUTIES CLEARLY ESTABLISH THE ADMINISTRATIVE EXEMPTION.

Nonetheless, Plaintiff ignores her own admission that **the majority of her job, if not all** of it, was geared toward **administering the workers' compensation cases and processes for the Company** – nationwide – by performing the following duties (Hodge, p. 22, lns. 19-25; p. 23, lns. 1-7):

1.  *Assess* the initial occupational injury, either directly or after receiving information from an on-site supervisor *to determine* whether the claim was a first aid injury or whether the claimant would be sent out to the contracted workers' compensation medical clinic.  Hodge, p. 27, lns. 21-25; p. 32, lns. 1-8; p. 42, lns. 4-8.  *Hodge had absolute discretion and authority in this decision.*  Hodge, p. 28, lns. 15-21. In fact, Hodge had the *discretion to select the medical clinic used by the Company*.  Hodge, p. 35, lns. 14-20.

2.  *Consult* with the treating physician regarding treatment plans *to ensure appropriate* light duty assignments, duration of condition and probable Maximum Medical Improvement ("MMI") dates *to provide recommendations related to potential settlement of claim and litigation surveillance*.  Hodge, p. 28, lns. 22-25; p. 32, lns. 1-8; p. 42, lns. 4-8; p. 45, lns. 23-25.

3.     ***Track and monitor*** on-going claims, ***using discretion and medical understanding to provide recommendations regarding approval of expenditures*** for surveillance ***and mediation authority*** to V.P. of Human Resources Beal.  Hodge, p. 40, lns. 16-25; p. 41, lns. 1-8.  ***Hodge had absolute discretion as to what information was material and would be tracked and reported to Beal***.  Hodge, p. 41, ln. 25; p. 42, lns. 1-3; Beal, p. 23, lns. 4-24.

4.     ***Audit financial reports and expenditures*** on workers' compensation claims for reconciliation and fiscal responsibility.  Hodge, p. 39, ln. 25; p. 40, lns. 1-5. Where irregularities in treatment and payment were noted, Hodge identified them, researched them, and advised the adjuster and higher management of the issues involved. Hodge, p. 40, lns. 14-25; p. 41, lns. 1-7.  Hodge used her medical and independent judgment.  Hodge, p. 42, lns. 19-23.  For example, if an employee suffered a low back injury, but the TPA paid for cardiac care, Hodge would identify that anomaly, notify and question the adjuster as to the expense, and reconcile the treatment as appropriate or inappropriate, ***making the recommendation whether the care should be covered under the claim***.  Hodge, p. 40, lns. 10-15.

5.     ***Determination and recommendation*** based on medical expertise as to ***whether light duty assignments*** of injured workers ***were appropriate*** for their individual restrictions.  Hodge, p. 37, lns. 11-13.

6.     ***Determination and recommendation*** based on medical expertise as to ***whether claim was medically valid, suspicious, or should be questioned*** by the Company.  Hodge, p. 42, lns. 19-23.

7.      Attendance and ***representation of Company at mediation*** of workers'
compensation claims holding monetary authority for resolution of claims.  Hodge, p. 43,
lns. 3-11, 16-19.

8.      Working with TPA adjuster and outside counsel to ensure that both
received the material information related to all matters concerning the claimant's
condition at work, including ***selection of which information and facts were material and***
***necessary for report***.  Hodge, p. 26, lns. 17-25; p. 27, lns. 1-12.

9.      ***Ensure compliance with legal requirements*** for post-accident drug testing
under Florida's Workers' Compensation Act.  Hodge, p. 45, lns. 17-22; p. 46, lns. 3-5.

10.     ***Receive and resolve complaints*** from claimants regarding treatment plans
and light duty assignments.  Hodge, p. 33, lns. 6-24; p. 34, lns. 1-25.

These duties are consistent with, if not requiring even more discretion and judgment, than that of
the plaintiff in *Szymula v. Ash Grove Cement Co.*, 941 F. Supp. 1032 (D. Kan. 1996) (argued in
Defendants' motion for summary judgment) for which the Court found the plaintiff to be exempt
under the administrative exemption during the time she administered the employer's workers'
compensation claims.  As in *Szymula*, Defendants are entitled to summary judgment.

Plaintiff ignores all of the aforementioned, making the confusing and contradictory
arguments that: (1) She is not exempt because she did not use independent judgment and
discretion in her job; and (2) She is not exempt because she used her independent medical
knowledge and judgment to make decisions in her job.  (Doc. 20, p. 6).  Plaintiff spins these
contradictory arguments by stating that because Defendants desired someone with medical
knowledge and background for a job which deals with communicating with medical
practitioners, reading medical records, and communicating with adjusters and attorneys on
medical claims, then the only exemption that is appropriate for consideration is the learned

7

professional exemption for which a Licensed Practical Nurse is not considered. However, it is the job duties that are determinative of whether an exemption is proper, not the license. Whether Plaintiff was correctly classified as exempt depends on the character of her responsibilities and tasks, not on her job title (or license status). *Justice v. Metropolitan Gov't of Nashville*, 4 F.3d 1387, 1392 (6th Cir. 1993) (quoting *Overstreet v. North Shore Corp.*, 318 U.S. 125, 132). "While an issue concerning how an employee spends [her] working time constitutes a question of fact, the issue of whether particular activities exempt an employee from the FLSA is an issue of law." *Bouder v. Prudential Financial, Inc.*, Case No. 06-CV-4359 (DMC), 2010 WL 3515567, at *4 (D.N.J. Aug. 31, 2010) (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)). "[T]he factual question under the FLSA is not how an employee believed she spent her workday, but what she actually did." *Chenensky v. New York Life Ins. Co*., Case No. 07 Civ. 11504 (WHP), 2010 WL 2710586, at *2 (S.D.N.Y. June 24, 2010) (citing *Reiseck v. Universal Comm'ns of Miami, Inc.*, 591 F.3d 101, 107-08 (2d Cir. 2010)).

In advancing the absence of the learned professional exemption – not argued by Defendants – Plaintiff goes on to argue, without any support whatsoever, that the Company was "like a hospital" and that "if *[Plaintiff] made the determination* that the injury was beyond the scope of her ability, she would refer the employee to a Workers' Comp clinic for the employee to see a physician." Doc. 20, p. 6. Plaintiff makes this assertion of use of independent judgment and discretion while simultaneously arguing a lack of independent judgment and discretion only six (6) lines later in her cross-motion. Both theories are without merit, however, as Plaintiff testified:

Q:    So you would use your medical training when the initial injury occurred to try to make that initial determination *whether it was a first-aide only claim as defined by Worker's Compensation, correct*?

A:    *Correct*.

8

Hodge, p. 28, lns. 5-9.  Florida Administrative Code, 69L-3.002(13) defines a "first aid" claim as one that "***does not require medical treatment*** for which charges are incurred ***and does not cause the employee to miss work for more than one day***."  *Id.*  Plaintiff clearly testified that when she was in doubt, she would send the injured employee to the medical practitioner – treating the injury as a medical claim, and not a first aid claim.  Hodge, p. 28, lns. 13-14.  Thus, Plaintiff used her independent judgment and discretion as to whether any given injury met the definition of "first aid" as defined by the Workers' Compensation Act.  It is this determination and judgment that is relevant to whether Plaintiff was properly classified as exempt under the administrative exemption – not the learned professional exemption, which is nothing more than a "red herring."

"The exercise of discretion and independent judgment implies that the employee has the authority to make an independent choice, free from ***immediate direction or supervision*** [e.g. whether to send an employee out for treatment]…***employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level*** [e.g. recommendations of surveillance or whether to settle claims]." Discretion and independent judgment can also "***consist of recommendations for action rather than the actual taking of action.***"  29 C.F.R. § 541.202(c).  Here, the record is overwhelming that Plaintiff's duties fell within this exercise of discretion and judgment for the primary purpose of administering the Company's workers' compensation claims, which on average are in excess of approximately $850,000 each year.  Beal Declaration ¶6.  Plaintiff was the sole in-house administrator of those claims, and her recommendations to higher management were accorded great weight and were of significant importance to the self-insured company.  Plaintiff admits

her recommendations were given great weight, and that those recommendations were followed. Hodge, p. 32, lns. 9-25; p. 33, lns 1-5.

### D.   *DE MINIMIS* DUTIES DO NOT DESTROY EXEMPTION.

As argued in Defendants' Motion for Summary Judgment, while Plaintiff performed other *de minimis* duties, such as eye and ear lavage, even those duties were in furtherance of her primary responsibility for managing the occupational injury claims/workers' compensation claims for the Company, continuing to support the propriety of the administrative exemption. *See, e.g., Juback v. Radioshack Corp.*, Case No. 8:08-cv-768-T-24TBM, 2009 WL 1259990, *2 (M.D. Fla. May 6, 2009) ("If an employee spends more than fifty percent of his time performing exempt work, he will generally be considered exempt from the overtime requirement. [29 C.F.R.] § 541.700(b)).  However, an employee may still be exempt even if exempt work consumes less than fifty percent of his time, if the other factors indicate that the exempt work constitutes her primary duty. *Id.*"); *Ferrell v. Gwinnett County Bd. of Educ.*, 481 F.Supp. 2d 1338, 1344 (N.D. Ga. 2007) ("[T]ime is only one factor to consider in the primary duty analysis . . . the more appropriate inquiry is to examine plaintiffs' primary value to the [employer].") (internal citations omitted).

## III.   PLAINTIFF DOES NOT DISPUTE SUMMARY JUDGMENT ON UNJUST ENRICHMENT

Finally, Plaintiff's failure to oppose Defendants' motion for summary judgment as to her unjust enrichment claim entitles Defendants to summary judgment as a matter of law.  *See* Summary Judgment Notice, Doc. 18, *citing Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  As such, summary judgment is appropriate on all claims in Plaintiff's complaint.

DATED this 19th day of March, 2014.

Respectfully submitted,

*/s/Jennifer Monrose Moore*
William E. Grob
Florida Bar Number 0463124
E-mail: william.grob@ogletreedeakins.com
Jennifer Monrose Moore
Florida Bar Number 35602
E-mail: jennifer.moore@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK &
    STEWART, P.C.
100 North Tampa Street, Suite 3600
Tampa, Florida  33602
Telephone:  813.289.1247
Facsimile: 813.289.6530
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of March, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Lynette Whitehurst, Esq., Blanchard, Merriam, Adel & Kirkland, P.A., Post Office Box 1869, Ocala, FL 34478, lwhitehurst@bmaklaw.com, Counsel for Plaintiff.

*/s/ Jennifer Monrose Moore*
Jennifer Monrose Moore

17351929.1

11