UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SUSAN HODGE,

                Plaintiff,

-vs-                              Case No.  5:13-cv-62-Oc-10PRL

CLOSETMAID CORPORATION, a
Florida Corporation, and CATHERINE
BEAL, an individual,

                Defendants.

_____/

## ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Susan Hodge claims that her former employers, ClosetMaid Corporation ("ClosetMaid") and Catherine Beal, violated the overtime compensation provisions of the Fair Labor Standards Act ("FLSA") by failing to pay her overtime wages for hours she worked in excess of 40 in any given work week (Doc. 2).  ClosetMaid and Ms. Beal have moved for summary judgment, asserting that at all times Ms. Hodge was an exempt administrative employee not entitled to overtime compensation (Doc. 14).  The motion for summary judgment has been fully briefed and is ripe for disposition (Docs. 20, 23).[1]

_____

[1]Ms. Hodge's response is also titled as a "Cross-Motion for Summary Judgment" (Doc. 20). The Case Management and Scheduling Order provided a deadline of February 4, 2014  for filing dispositive motions (Doc. 10).  Ms. Hodge's cross-motion was filed on February 28, 2014.  She did not seek leave from the Court to late-file her motion, and has not provided any explanation for her tardiness.  Because the motion is untimely, the Court will deny it, and will instead consider the document solely as a response to the Defendants' summary judgment motion.

Upon due consideration, and for the reasons discussed below, the Court concludes that the Defendants' motion is due to be granted, and that judgment shall be entered in their favor as to all claims.

## Undisputed Material Facts

### I.    The Parties

Defendant ClosetMaid is a national company in the business of providing people with ways to improve storage in their homes and offices, and is a worldwide leader in home storage and organization.  Its corporate headquarters are in Ocala, Florida, and the Company has manufacturing facilities in Ocala, Chino, California, Belle Vernon, Pennsylvania, and Cumberland/Grantsville, Maryland.   There is no dispute that ClosetMaid is an employer engaged in interstate commerce with annual gross sales in excess of $500,000.  Therefore, there is also no dispute that ClosetMaid is a covered employer and enterprise as defined by the FLSA.  See 29 U.S.C. § 203(d) and (s)(1).

Defendant Catherine Beal is the Vice President of Human Resources for ClosetMaid.  For purposes of resolving the present summary judgment motion only, the Defendants agree that Ms. Beal meets the requirements of an "employer" under the FLSA.  See 29 U.S.C. 203(d).

Ms. Hodge is a Licensed Practical Nurse, and has held a license in that profession since 1976.  ClosetMaid hired Ms. Hodge on November 2, 2006 as an

Occupational Nurse at the Ocala, Florida headquarters.[2]  Ms. Hodge remained in this position until ClosetMaid terminated her employment on August 29, 2012 for failing to report her own workers' compensation injury and for failing to report her treatment.[3] At the time her employment ended, Ms. Hodge was paid an annual salary of $52,025.00.

While employed at ClosetMaid, Ms. Hodge had a set work schedule of 8 a.m. to 5 p.m., five days per week.  However, she had the ability to modify her schedule to attend appointments or to take sick leave, without any loss in pay.  She did not punch a time clock, and did not maintain any records of the hours she worked.  Ms. Hodge's intermediate supervisors during her employment were Mary Price and Jennifer Boring. Ms. Beal was her next level supervisor.

## II.   Ms. Hodge's Job Duties

The Occupational Nurse position is part of the Human Resources Department, and the position's job duties include the responsibility for administering and managing workers' compensation claims for the Company nationwide.  According to ClosetMaid's

---

[2]Employment of a Practical Nurse as an "Occupational Nurse" would normally imply someone rendering first aid to employees who become ill or suffer minor injuries on the job, and, perhaps, some preventative medicine procedures.  In fact, however, as discussed infra, Ms. Hodge had a much broader range of responsibilities particularly with respect to workers' compensation matters.

[3]The irony of the reason for Ms. Hodge's termination is not lost on the Court.

job description,[4] the Occupational Nurse is responsible for establishing, promoting, coordinating, and recommending treatment plans for all workers' compensation claimants, "with the ultimate goal of ensuring optimal care is given in a cost effective manner." (Doc. 16, Ex. 1).  The position's duties included:

- assisting other HR department members with various projects as necessary, being able to interpret policy and provide general coverage in all areas of Human Resources.

- collaborating with Safety and Environmental departments.

- Formulating general clinic policies and procedures to comply with standing medical orders, local, state, and federal Occupational Safety and Health Administrations ("OSHA") Department of Transportation ("DOT") rules and regulations.

- compiling, submitting, and handling all documentation, records, reports and communications for all work-related accidents, and drug testing, and maintaining all DOT random drug screening documentation.

- assuring all appropriate documentation is current and updated at all times.

- being professional, courteous, and attentive to every patient's needs and concerns.

- eliciting and recording each patient's chief complaint.

---

[4]Ms. Hodge acknowledged that she received a copy of the job description at the time she was hired and that it accurately sets forth her job duties at ClosetMaid.  See Doc. 16, p. 21 (Deposition of Susan Hodge).

- taking vital signs and ensuring bio-hazardous waste containment.

- providing wound care, burn care, strain care, splinting, bandaging, basic or emergent care according to OSHA guidelines.

- performing eye lavage, ear lavage, fluorescein testing, finger stick glucose testing, application of ster-strips, gait training and crutch fitting, sling application, visual acuity testing, tetanus vaccines, Morgan Lens irrigation and dispensing of over the counter medications according to OSHA guidelines.

- performing venipuncture, collecting urine, blood, or breath samples.

- obtaining and documenting applicant's health history during post-offer health screenings, and actually performing the post-offer health screenings.

- assessing the need of oxygen and application of such.

- proficiency in Triage process.

- overseeing all light duty assignments on all shifts in all departments.

- maintaining all inventory in the Occupational Health Clinic, including medical supplies.

- coordinating and instituting various special projects such as annual health fairs, wellness programs, annual flu shots, annual hearing, pulmonary, and blood pressure testing, and the on-site massage program.

- maintaining knowledge of all ClosetMaid health and safety policies and procedures.

- maintaining all legal and medical workers compensation files

- maintaining knowledge over all workers' compensation medical record forms and assisting and advising the benefits administrator regarding FMLA and ADA issues.

- maintaining open communication with Patient Managed Care, Attorneys, Attending Physicians, Adjusters, Field Nurses, Physical Therapists, HR Managers, Safety Managers, Area Manager, Supervisors, Temporary Service Managers, and the Director of HR.

- updating information on OSHA 300 regarding light duty days, lost time work days, and recording of such.

- attending and documenting all monthly Managed Care meetings.

Id.  The Occupational Nurse also manages three subordinate emergency medical technicians, and is responsible for the overall management of the occupational health clinic and programs.  Id.[5]

ClosetMaid spends on average more than $850,000 each year for the administration of its employees' occupational injuries, including workers' compensation claims.  ClosetMaid is a self-insured workers' compensation employer, and uses a third-party administrator to adjust those claims.  The Occupational Nurse takes a hand-on role in the administration of the workers' compensation injury claims and the overall

---

[5]Although Ms. Hodge supervised three emergency medical technicians during her first year of her employment, these three employees ultimately left ClosetMaid and were not replaced. From approximately 2007 forward, Ms. Hodge did not directly supervise any employees.

processing of those claims.  The Occupational Nurse is ClosetMaid's representative for the administration of these claims, and maintains a consistent check on the third-party administrator.

The Defendants have submitted the deposition testimony of Ms. Hodge (Doc. 16), who testified that the majority of her job duties were directed towards promoting, coordinating, and recommending treatment plans for workers' compensation claimants. She was responsible for managing claims and recommending treatment plans for employees both in Florida and at all of ClosetMaid's locations nationwide.  During her last two to three years at ClosetMaid, Ms. Hodge managed between 30 and 50 worker's compensation claims, with at least half of them outside of Florida.

For the workers' compensation claims that occurred in Florida, Ms. Hodge testified that she would first determine whether the injury could be treated onsite as a first-aide only claim (which was not required to be reported), or should be reported and referred to a workers' compensation physician.  If it was merely a first-aide only claim which required only minor treatment, Ms. Hodge would treat the employee's injury herself.  If the injury was referred to a workers' compensation physician, she attended the employee's doctor appointments, consulted with the physician, ensured that the employee was receiving adequate medical care, consulted with legal counsel when necessary and provided her opinion to counsel with respect to whether an employee should be subject to surveillance or that his claim should be settled, and verified that any light duty restrictions were being complied with.  If an employee complained that

light duty restrictions were exacerbating his or her injury, Ms. Hodge would make the decision to refer the employee back to the workers' compensation clinic for further treatment and evaluation, and would make recommendations to management to change the employee's assigned duties.

Ms. Hodge would also speak with the third-party administrator to ensure that she had all necessary information to process the claim, and would make recommendations to the administrator about how to handle a specific workers' compensation claim. Ms. Hodge admitted that she worked more on the management side of workers' compensation claims, that she had complete discretion to make these assessments and determinations, and that her opinions and recommendations were given great weight and deference.

In addition, Ms. Hodge testified that ClosetMaid sent her to several seminars on OSHA and workers' compensation laws. She also was responsible for reviewing expense reports, and would question the third-party administrator on any unusual medical expenses. Ms. Hodge maintained reports on each claim, and would meet with her supervisors to discuss every claim. Ms. Hodge made recommendations to her supervisors about settling claims, and her recommendations were given great weight. She would represent ClosetMaid at workers' compensation proceedings, and was given settlement authority (within specified dollar limits) for mediation hearings. Ms. Hodge also admitted that she was tasked with updating the various company policies relating to her areas of responsibility.

With respect to the workers' compensation claims occurring outside of Florida, Ms. Hodge did not provide any first-aide treatment, and did not accompany employees to their doctor's appointments.  Instead, Ms. Hodge would regularly consult with the on-site insurance adjusters and nurse case managers and would report back to her supervisors about the status of the claim.  She would also verify that any light duty restrictions imposed were being adhered to.  And, if Ms. Hodge found it necessary based on the information she complied, she would recommend that an employee be subject to surveillance to verify the severity of his injury.  As with her Florida claims, Ms. Hodge would also work with legal counsel and provide her recommendations concerning surveillance and settlement.

Ms. Hodge repeatedly admitted that her predominant job duties were related to the management of occupational injuries.  To the extent she provided any medical treatment directly, it was in response to a worker's compensation complaint, and was part of Ms. Hodge's assessment as to whether the complaint was a non-reportable, first-aide only claim.  She also was responsible for making purchasing decisions, preparing an annual budget for the workers' compensation clinic, and ensuring that the clinic remained fully stocked with supplies.

With respect to the various projects Ms. Hodge was in charge of, she unilaterally decided to abolish the blood pressure program because it was inefficient.  She also made the independent decision not to publish a Company newsletter.  Lastly, Ms. Hodge testified that she provided her opinion to management as to whether an

employee's medical condition qualified for FMLA leave, and whether an employee was ready to return to work from FMLA leave.

The Defendants have also submitted the deposition and affidavit testimony of Ms. Beal (Docs. 15, 17).  Ms. Beal's testimony closely paralleled that of Ms. Hodge's.  According to Ms. Beal, she expected Ms. Hodge to be the "point guard" with respect to ClosetMaid's administration of the workers' compensation claims, and to continually evaluate both the financial and medical services provided.  Ms. Hodge would provide Ms. Beal with recommendations regarding surveillance and settlement, and would represent the company during litigation.  Ms. Beal relied on Ms. Hodge's expertise and judgment in determining which claim information was material to decisions on the Company's behalf, and Ms. Beal gave her recommendations great weight and deference.  Ms. Beal confirmed that Ms. Hodge was the person who dealt with the third-party administrators and attorneys and doctors on a daily basis.  Ms. Beal also affirmed that Ms. Hodge had the authority to recommend changes to management policies with respect to the handling of workers' compensation claims and employee drug testing.  Ms. Hodge's recommendations were strongly considered and frequently adopted.

## III.    Procedural History

Ms. Hodge filed her Complaint in the County Court of the Fifth Judicial Circuit, in and for Marion County, on January 17, 2013 (Doc. 2).  The Defendants removed the

case to this Court on February 7, 2013, pursuant to 28 U.S.C. §§ 1331 and 1367 (Doc. 1).  Ms. Hodge has asserted two claims against ClosetMaid and Ms. Beal:  (1) a claim that they violated the overtime provisions of the FLSA, 29 U.S.C. § 207 (Count I); and (2) a state law claim for unjust enrichment (Count II).  Ms. Hodge seeks unpaid overtime compensation, liquidated damages, compensatory damages, injunctive relief, and attorney's fees and costs.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying this standard, the Court must examine the materials on file and the record evidence "in the light most favorable to the nonmoving party."  Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  When faced with a "properly supported motion for summary judgment [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."  Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).  Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248, 106 S. Ct. at 2510.

## Discussion

## I.    The Administrative Exemption Defined

Employees who are engaged in interstate commerce are generally entitled to receive overtime pay at one and one-half times their regular rate for all hours worked in excess of forty (40) per week, unless the employee is "employed in a bona fide executive, administrative, or professional capacity."  See 29 U.S.C. § 207(a)(1); 213(a)(1); see also Avery v. City of Talladega, 24 F.3d 1337, 1340 (11th Cir. 1994).  The burden of showing entitlement to an exemption is on the employer, who must prove the applicability of the exemption by clear and affirmative evidence.  Gregory v. First Title of Amer., Inc., 555 F.3d 1300, 1302 (11th Cir. 2009) (quoting Klinedinst v. Swift Invs., Inc., 260 F.3d 1251, 1254 (11th Cir. 2001).  FLSA exemptions are narrowly construed, and are "to be applied only to those clearly and unmistakably within the terms and spirit of the exemption."  Morgan v. Family Dollar Stores, Inc., 551 F.3d

1233, 1269 (11th Cir. 2008).  See also Gregory, 555 F.3d at 1302; Nicholson v. World Bus. Network, Inc., 105 F.3d 1361, 1364 (11th Cir. 1997).  The determination of what job duties a plaintiff performed is a question of fact; however, whether the plaintiff was an administratively exempt employee for performing those duties is a question of law to be decided by the Court.  Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 106 S. Ct. 1527 (1986); Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590 (11th Cir. 1995).

The Defendants contend that Ms. Hodge was properly classified as an exempt administrative employee.  The regulations implementing the FLSA define an "employee employed in a bona fide administrative capacity" to mean any employee:  (1) who is compensated on a salary basis at a rate of not less than $455 per week; (2) whose primary duty is the performance of office or non-manual labor directly related to the management or general business operation of the employer or its customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a).

The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee.  To meet this requirement, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  29 C.F.R. § 541.201(a).  Such work includes, but is not limited to, "work in functional areas such as tax; finance, accounting, budgeting, auditing, insurance, quality control; purchasing,

procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities."  29 C.F.R. § 541.201(b).

The phrase "discretion and independent judgment" generally "involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 C.F.R. § 541.202(a). "Matter of significance refers to the level of importance or consequence of the work performed."  Id.  The regulations further provide that the phrase  "discretion and independent judgment" must be analyzed in light of all the facts involved in the particular employment situation at issue.  29 C.F.R. § 541.202(b).  Factors to be considered include, but are not limited to:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance

on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

Id.

In addition, the exercise of discretion and independent judgment "implies that the employee has authority to make an independent choice, free from immediate direction or supervision." 29 C.F.R. § 541.202(c). This includes situations where an employee's decisions or recommendations are reviewed at a higher level. Id. "[T]he term "discretion and independent judgment does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action." Id.

## II.    Ms. Hodge Qualifies as an Administratively Exempt Employee

There is no dispute that Ms. Hodge satisfies the salary element of the administrative exemption. Taking the undisputed facts in the light most favorable to Ms. Hodge, the Court further concludes as a matter of law that the other two prongs of the exemption are also satisfied.

### A.    Ms. Hodge's Primary Duties Directly Related to the Management or General Business Operation of ClosetMaid

Ms. Hodge's own testimony, which is corroborated by Ms. Beal, demonstrates that she spent the majority of her work duties performing "office or non-manual labor

directly related to the management or general business operation" of ClosetMaid.  Ms. Hodge admitted that she spent the majority of her work duties managing and assessing workers' compensation and employee injury claims for all of ClosetMaid's employees nationwide.  (Doc. 16, pp. 22-23).  She was the person who assessed employee injuries and determined whether the injury should be reported to ClosetMaid's workers' compensation plan.  She managed the claim from start to finish, meeting and consulting with physicians, attorneys, the third-party plan administrator, and the employees.  She maintained documentation and reports, audited expense reports, and ensured that all applicable local, state, and federal laws were adhered to, including OSHA and DOT drug testing requirements.  Ms. Hodge also verified that an employee's duty restrictions were adhered to.  In addition, Ms. Hodge was in charge of purchasing supplies, and creating an annual budget for her department.  Such job duties were not manual in nature; she was not working on a manufacturing line or selling retail products.

Ms. Hodge's job duties also clearly related to ClosetMaid's management and general business operations – the Company maintains a self-insured workers' compensation plan for which Ms. Hodge was the main point of contact within the Company.  See also 29 C.F.R. § 541.201(a) (listing work in areas such as budgeting, insurance, purchasing, safety and health, human resources, employee benefits, and legal and regulatory compliance as examples of work "directly related to the

management or general business operations.").[6]  Ms. Hodge's job directly impacted the management of employee health costs – a key business concern – and she was an integral part of the Company's human resources department.

Ms. Hodge argues that she is not exempt because her primary duties entailed working as a licensed practice nurse (Doc. 20, p. 4), and that she did not manage other employees, did have the authority to hire or fire other employees, or to recommend pay raises.  Ms. Hodge's testimony belies the first part of this argument.  As discussed above, she repeatedly admitted that the majority of her job duties related to the management of workers' compensation claims, and half of those claims originated outside of Florida, making it impossible for Ms. Hodge to have rendered any medical care.  She further testified that to the extent she performed any traditional nursing duties (such as suturing minor wounds and dispensing over the counter medications), they were primarily performed in relation to assessing whether an employee's injury should be reported to ClosetMaid's workers' compensation plan third-party administrator for processing.  To be sure, Ms. Hodge did provide some minor medical care to ClosetMaid employees, but there is simply no evidence before the Court to

---

[6]In her response, Ms. Hodge misapprehends the definition of "management or general business operations."  It is her position that unless Ms. Hodge worked in the executive department of ClosetMaid and made decisions relating to the management of the Company as a whole (such as the types of products to manufacture), she could not possibly satisfy this portion of the administrative exemption.  See Doc. 20, p. 5.  Ms. Hodge construes the definition far too narrowly.  There are a myriad of ways that an employee can work in management and assist with general business operations, including working in human resources.  Management does not only mean company-wide business decisions.  See 29 C.F.R. § 541.201(a).

even suggest, must less create a genuine issue of material fact, that such medical care constituted her primary job duties.  Griffin-Moore v. City of Brooksville, Fla., 2013 WL 806674 at * 3 (M.D. Fla. Mar. 5, 2013) ("Primary duties" are those duties which are an employee's "principal, main, major, or most important dut[ies] when analyzed in light of all the facts, such as 'the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; [and] the employee's relative freedom from direct supervision.'") (quoting Juback v. Radioshack Corp., 2009 WL 1259990 * 2 (M.D. Fla. May 6, 2009)).  See also 29 C.F.R. § 541.700(b).  Work performed incidental to and in conjunction with Ms. Hodge's workers' compensation management duties is not considered non-exempt.  See Stevens v. SimplexGrinnell, LLP, 190 Fed. Appx. 768, 771 (11th Cir. July 11, 2006).

Moreover, the fact that Ms. Hodge did not manage any employees or have hiring or firing authority does not render her a non-exempt employee.  There is nothing within the FLSA regulations defining "administrative exemption" that requires an employee to supervise others in order to be exempt.  Rather, the supervision and management of employees relates to the "executive exemption" which is not at issue in this case.  And Ms. Hodge's emphasis on the fact that she relied upon her medical expertise to perform her duties is also of no moment.  To determine whether an employee is exempt, the Court must focus on the facts relating to the duties the employee actually performed; that she might have been qualified or not qualified to perform other duties is of little or no probative value.  The question is what were the duties and

responsibilities of the job as Ms. Hodge actually performed it.  Whether Ms. Hodge relied on her medical expertise or maintained a license is simply not relevant.  What is relevant is that her primary job duties were clearly directed towards management and general business operations.

The Defendants have shown by clear and affirmative evidence that Ms. Hodge's primary duties related to the performance of office or non-manual labor directly related to the management or general business of ClosetMaid.

**B.     Ms. Hodge's Primary Duties Included the Exercise of Discretion and Independent Judgment With Respect to Matters of Significance**

Ms. Hodge's testimony also establishes this prong of the administrative exemption test.  She admitted that she routinely made recommendations to ClosetMaid's workers' compensation plan third-party administrator about how to handle claims.  She also testified that she made recommendations to the third-party administrator, to legal counsel and to her supervisors concerning whether to settle claims, and whether to place an employee under surveillance.  Moreover, she prepared her department's budget, attended mediation conferences where she was given settlement authority, and proposed changes to several employee policies.  It is undisputed that Ms. Hodge's recommendations were given great weight and were frequently adopted.  In short, Ms. Hodge had the authority to affect, interpret, or implement mangement policies and practices, and she provided consultation and expert advice to management.  29 C.F.R. § 541.202(b).  Such actions clearly show that

Ms. Hodge's job duties involved "the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a).

In addition, the undisputed facts show that Ms. Hodge had the authority to make independent decisions, free from immediate direction or supervision. Both Ms. Hodge and Ms. Beal testified that Ms. Hodge was the point of contact for all workers' compensation claims. Ms. Beal never personally consulted with attorneys, adjusters, or supervisors unless Ms. Hodge felt it was necessary, and Ms. Beal consistently relied on Ms. Hodge's recommendations. Although Ms. Hodge's decision-making authority was often limited to making recommendations to higher management only supports ClosetMaid's argument that she was an exempt employee. "The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action." 29 C.F.R. § 541.202(c). See also Viola v. Comprehensive Health Mgmt., 441 Fed. Appx. 660, 663-64 (11th Cir. Sept. 26, 2011).

Lastly, there can be no dispute that the matters upon which Ms. Hodge exercised her discretion and independent judgment constituted matters of significance. Ms. Hodge supervised and managed all workers' compensation claims nationwide, and also ensured compliance with all applicable government regulations. This is not a minor task, and directly related to the operation of ClosetMaid's facilities. Moreover,

ClosetMaid has shown that employee on-the-job injury claims comprise on average more than $850,000 in expenses each year – a significant cost to the Company.

In response, Ms. Hodge argues that she only made "clerical decisions" and that she followed established Company policies and guidelines.  The evidence submitted to the Court does not support this assertion.  Ms. Hodge's job duties went far beyond "clerical decisions;" she has admitted that she made her own decisions concerning how to manage workers' compensation claims, and she has also admitted that she modified and created employee policies during her employment.  There is also no evidence supporting her claim that she merely followed established policies and guidelines.

The decision cited by the Defendants, Szymula v. Ash Grove Cement Co., 941 F. Supp. 1032 (D. Kan. 1996) is factually analogous and persuasive.  The plaintiff in Szymula was hired as a secretary, but over time she assumed additional job duties with respect to the employer's workers' compensation plan, including:

> helping determine whether employees needed to consult physicians and, on occasion, whether employees should be placed under surveillance; assisting corporate management in ascertaining whether private investigators should be retained; working closely with the various insurance carriers administrating [the employer's] plan in an attempt to reduce costs; and formulating proposed claim settlements. . . .

941 F. Supp. at 1035.  The plaintiff also made recommendations to her supervisors concerning how to resolve claims, and revised the employee manual.  Id. at 1038.

The district court held that these facts demonstrated as a matter of law that the plaintiff's job duties consisted of office or non-manual work that was of substantial

importance to her employer, and that she exercised substantial independent discretion and judgment.  941 F. Supp. at 1037-39.  Specifically:

> [T]he term discretion and independent judgment . . . does not necessarily imply that the decisions made by the employee must have finality that goes with unlimited authority and a complete absence of review.  The decisions . . . may consist of recommendations for action rather than the actual taking of action.  The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment within the meaning of the regulations.

Id. at 1038.

The Court agrees with the analysis of Szymula, and finds that the undisputed material facts demonstrate, as a matter of law, that Ms. Hodge's primary duties included the exercise of discretion and independent judgment with respect to matters of significance.  See also 29 C.F.R § 541.203 (listing examples of employees who are administrative exempt, including insurance claims adjusters and human resources managers).

## Conclusion

Because the undisputed facts, taken in the light most favorable to Ms. Hodge, demonstrate that ClosetMaid has satisfied all three prongs of the administrative exemption, the Court finds as a matter of law that Ms. Hodge was an exempt employee and is not entitled to overtime compensation under the FLSA.  The Court further finds that Ms. Hodge's unjust enrichment claim must fail – that claim is premised solely on

the allegation that the Defendants failed to provide Ms. Hodge with overtime compensation (Doc. 2, ¶¶ 25-30).   Because the Court has found that Ms. Hodge was not entitled to overtime compensation, it follows that she also did not confer a benefit upon the Defendants for which she was not properly compensated.

Accordingly, upon due consideration, it is hereby ORDERED as follows:

(1)   Plaintiff Susan Hodge's Cross-Motion for Summary Judgment (Doc. 23) is DENIED.

(2)   Defendants ClosetMaid Corporation's and Catherine Beal's Motion for Summary Judgment (Doc. 14) is GRANTED.

(3)   The Clerk is directed to enter judgment in favor of the Defendants and against the Plaintiff as to all claims.  The Clerk is further directed to terminate all other pending motions and to close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 2nd day of April, 2014.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
Maurya McSheehy